UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

LUZ J. ORTEGA                           )
                                        )
            Plaintiff                   )
                                        )
                                        )
     v.                                 )    Civil Action No. 12-30189-KPN
                                        )
                                        )
CAROLYN W. COLVIN,                      )
Acting Commissioner of Social           )
Security Administration,[1]             )
                                        )
            Defendant                   )

MEMORANDUM AND ORDER REGARDING PLAINTIFF'S
MOTION FOR JUDGMENT ON THE PLEADINGS and
DEFENDANT'S MOTION FOR JUDGMENT AFFIRMING
THE COMMISSIONER'S DECISION (Document Nos. 13
and 15)
August 9, 2013

NEIMAN, U.S.M.J.

    This is an action for judicial review of a final decision by the Commissioner of the Social Security Administration ("Commissioner") regarding an individual's entitlement to Social Security Disability Insurance ("SSDI") pursuant to 42 U.S.C. § 405(g). Luz J. Ortega ("Plaintiff") asserts that the Commissioner's decision denying her such benefits -- memorialized in a June 24, 2011 decision of an administrative law judge -- is in error. She has filed a motion for judgment on the pleadings and the Commissioner, in turn, has moved to affirm.

---

[1] Carolyn W. Colvin, became the Commissioner of Social Security on February 14, 2013 and is substituted as the defendant in this action pursuant to Fed. R. Civ. P. 25(d)(1) and (2).

The parties have consented to this court's jurisdiction. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. For the following reasons, the court will deny Plaintiff's motion and allow the Commissioner's motion to affirm.

I. S<span>TANDARD OF</span> R<span>EVIEW</span>

A court may not disturb the Commissioner's decision if it is grounded in substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind accepts as adequate to support a conclusion. *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981). The Supreme Court has defined substantial evidence as "more than a mere scintilla." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Thus, even if the administrative record could support multiple conclusions, a court must uphold the Commissioner's findings "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [her] conclusion." *Ortiz v. Sec'y of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991) (citation and internal quotation marks omitted).

The resolution of conflicts in evidence and the determination of credibility are for the Commissioner, not for doctors or the courts. *Evangelista v. Sec'y of Health & Human Servs.*, 826 F.2d 136, 141 (1st Cir. 1987)*; Rodriguez*, 647 F.2d at 222. A denial of benefits, however, will not be upheld if there has been an error of law in the evaluation of a particular claim. *See Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In the end, the court maintains the power, in appropriate circumstances, "to enter . . . a judgment affirming, modifying, or reversing the [Commissioner's] decision" or to "remand[] the cause for a rehearing." 42 U.S.C. §

405(g).

## II. B<small>ACKGROUND</small>

Plaintiff applied for SSDI benefits on July 22, 2009. (Administrative Record ("A.R.") at 129-32.) Plaintiff's application was denied both initially and upon reconsideration, and on June 24, 2011, an administrative law judge ("ALJ"), following a hearing, issued a written decision denying the claim as well. (A.R. at 24, 62-70.) In her initial application, Plaintiff had claimed she was disabled due to a herniated disc, curvature of the spine (scoliosis), and depression. (A.R. at 65.) At the hearing, she also claimed disability due to asthma and anxiety. (A.R. at 39-44.) The Appeals Council denied Plaintiff's request for review, making the ALJ's decision final. (A.R. at 1.) In due course, Plaintiff filed the instant action, the Commissioner compiled the administrative record, and the parties submitted the cross motions at issue.

## III. D<small>ISABILITY</small> S<small>TANDARD AND THE</small> ALJ'<small>S</small> D<small>ECISION</small>

An individual is entitled to SSDI benefits if, among other things, she has an insured status and, prior to its expiration, is disabled. *See* 42 U.S.C. § 423(a)(1)(A) and (E). The Social Security Act (the "Act") defines disability, in part, as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A). An individual is considered disabled under the Act,

> only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [s]he

> lives, or whether a specific job vacancy exists for h[er], or whether [s]he would be hired if [s]he applied for work.

42 U.S.C. §§ 423(d)(2)(A).  *See generally Bowen v. Yuckert*, 482 U.S. 137, 146-49 (1987).

In determining disability, the Commissioner follows the five-step protocol described by the First Circuit as follows:

> First, is the claimant currently employed?  If [s]he is, the claimant is automatically considered not disabled.
>
> Second, does the claimant have a severe impairment?  A "severe impairment" means an impairment "which significantly limits [her] physical or mental capacity to perform basic work-related functions."  If [s]he does not have an impairment of at least this degree of severity, [s]he is automatically not disabled.
>
> Third, does the claimant have an impairment equivalent to a specific list of impairments in the regulations' Appendix 1?  If the claimant has an impairment of so serious a degree of severity, the claimant is automatically found disabled.
>
> . . . .
>
> Fourth does the claimant's impairment prevent h[er] from performing work of the sort [s]he has done in the past?  If not, [s]he is not disabled.  If so, the agency asks the fifth question.
>
> Fifth, does the claimant's impairment prevent h[er] from performing other work of the sort found in the economy?  If so [s]he is disabled; if not [s]he is not disabled.

*Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6-7 (1st Cir. 1982).

The ALJ found as follows with respect to the five-step protocol. Plaintiff has not engaged in any substantial gainful activity since the alleged onset date of her disability (question 1); she has impairments which are severe, namely, thoracic scoliosis, history of asthma, and depression, but those impairments do not meet or medically equal one

of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (questions 2 and 3).  (A.R. at 18.)  The ALJ also found that, although Plaintiff was unable to perform past relevant work, she had the residual functional capacity to perform light work subject to certain conditions.[2]  (A.R. at 19.)  The ALJ further determined that the Plaintiff could perform work that existed in significant numbers in the national economy (questions 4 and 5).  (A.R. at 23-24.)  In the end, the ALJ determined, Plaintiff was not disabled as of June 24, 2004, the date she was last insured.  (A.R. at 24.)

## IV.  DISCUSSION

Plaintiff makes two arguments challenging the ALJ's decision.  First, she asserts that the ALJ's residual functional capacity ("RFC") assessment was inconsistent with the hypothetical question posed to the vocational expert and, thus, the assessment was erroneous as a matter of law.  Second, Plaintiff asserts that, in assessing Plaintiff's RFC, the ALJ did not take into account the disabling effects of Plaintiff's depression.  For the following reason, the court finds that the Commissioner has the better argument.

---

[2] The ALJ found that Plaintiff could perform light work subject to the following conditions:

> frequently lifting ten pounds, occasionally lifting twenty pounds and sitting, standing and walking six hour during an eight-hour workday, but would have been limited to no more than occasional climbing of ramps and stairs, no more than occasional stooping, crawling, crouching or kneeling, would have been unable to climb ladders, ropes or scaffolds, incapable of performing activities requiring left foot/leg controls, would have needed to avoid exposure to temperature extremes, vibration, fumes, dust, gases, humidity and heights, would have been incapable of any overhead lifting or reaching, would have needed a position which did not require English literacy and would have been limited to simple, unskilled tasks.

(A.R. at 19.)

A. <u>Inconsistency between Residual Functional Capacity and Hypothetical</u>

At the hearing, the ALJ asked the vocational expert whether a hypothetical individual could perform Plaintiff's past job or other jobs existing in the national economy. (A.R. at 52.) That individual was defined as follows:

> [Plaintiff]'s age, education, work experience, in this case age would be less than thirty two, the individual would be limited in what the Social Security Administration defines as light work, allowing for simple, unskilled tasks only. Work should allow for English illiteracy, no operation of left foot or leg controls. No work at heights, using ladders, ropes or scaffolding. No overhead lifting or reaching. No more than occasional, occasional being defined as up to one third of the time use of ramps, stairs, stooping, crouching, crawling, kneeling. *No more than incidental exposure to extremes of cold, heat, vibration, fumes, dust, gases or humidity.*

(A.R. at 52) (emphasis added).

In her later decision denying Plaintiff's claim, the ALJ found that Plaintiff had the RFC to perform light work but that she "would have needed to *avoid exposure* to temperature extremes, vibration, fumes, dust, gases, humidity and heights." (A.R. at 19) (emphasis added). In seeking remand, Plaintiff argues that the hypothetical question -- that the individual have no more than "incidental exposure" to environmental conditions -- was less restrictive than the RFC limitation set forth in the ALJ's decision -- that Plaintiff must "avoid" environmental conditions -- thereby making the ALJ's conclusion as to Plaintiff's lack of disability invalid. The court disagrees.

As the Commissioner argues, there is no material difference between the hypothetical question and the RFC, a conclusion which finds support in a prior decision of this court, *Greene v. Astrue*, 2012 WL 1248977 (D. Mass. April 12, 2012). There, the court noted that "[a]n administrative law judge's failure to use in his RFC assessment the

6

exact language of a posed hypothetical does not automatically render his findings erroneous"; rather, any such "difference must be material in order to potentially constitute an error." *Id.* at *4.  Similar to the hypothetical in this case, the administrative law judge in *Greene* asked the vocational expert whether a person who could have no "more than *incidental* exposure to extremes of col (sic) or vibration" could perform work in the national economy.  *Id.* (emphasis in original).  The court determined that there was no material difference between that hypothetical and the limitation in the administrative law judge's RFC assessment that the claimant "would need to *avoid* the extreme cold, vibrations." *Id.* at *4-5 (emphasis in original).  Here, too, the need to avoid "incidental exposure" to an environmental condition adequately conveys that Plaintiff would be unable to work in any job which would expose her to that condition, *i.e.*, that she would need to "avoid exposure" to the condition.  In essence, there is no material difference between the phrases "no more than incidental exposure" and "avoid exposure."

Plaintiff's reliance on *Slovak v. Barnhart*, 2003 WL 21246049 (D.N.H. 2003), does not persuade the court otherwise.  The *Slovak* court remanded the case because the hypothetical stated that "[the claimaint] was able to perform limited reaching, handling, gross manipulation, fingering, fine manipulation, and feeling" but the administrative law judge's RFC determined that the claimant "was unable to perform tasks that require handling or fingering." *Id.* at *7 (internal quotation marks omitted).  The difference between *limited* ability to perform certain tasks and *complete* inability to perform those tasks is obviously significant, and distinguishable from the immaterial difference at play

here.³

Even if the difference here between the hypothetical and RFC were material, the error would be harmless because two of the jobs identified by the vocational expert, -- assembler (Dictionary of Occupational Titles ("DOT") number 706.684-022) and cafeteria attendant (DOT number 311.677-010) -- do not involve exposure to *any* of the limiting environmental conditions listed in either the hypothetical or the RFC. *See* U.S. DEP'T OF LABOR, *SELECTED CHARACTERISTICS OF OCCUPATIONS* ("SCO") at 284, 367 (available at 1991 WL 679050, 1991 WL 672694).⁴ Thus, even were the ALJ's hypothetical identical to her RFC assessment, the vocational expert would have identified jobs in the national economy which Plaintiff could perform and upon which the ALJ could rely. *See Greene*, 2012 WL 1248977, at *5 (denying a remand because none of the jobs listed by the vocational expert would have involved exposure to the environmental conditions listed in the RFC).

B. <u>Failure to Consider Depression in RFC Assessment</u>

In her second argument, Plaintiff asserts that the RFC did not reflect the severity

---

³ Other cases cited by Plaintiff are also inapposite. *See, e.g., Arocho v. Sec'y of Health & Human Servs.*, 670 F.2d 374, 375 (1st Cir. 1982) (holding that the inputs into a vocational expert's hypothetical question must correspond to outputs from medical authorities); *Mead v. Barnhart*, 2004 WL 2580744, *1 n.1 (D.N.H. 2004) (remanding case when the administrative law judge's determination was in direct conflict with testimony of vocational expert).

⁴ The SCO, a volume supplementing the DOT, states that the positions of assembler and cafeteria attendant involve no exposure to extreme cold, extreme heat, wet and/or humid conditions, vibration, working in high, exposed places, or atmospheric conditions. U.S. Dep't of Labor, *Selected Characteristics of Occupations* at 284, 367. Atmospheric conditions in turn, is defined as including exposure to "fumes, noxious odors, dusts, mists, gases, and poor ventilation" *Id.* at Appendix D.

of Plaintiff's depression and anxiety; rather, Plaintiff maintains, "[t]he medical evidence, coupled with [Plaintiff]'s testimony, clearly establishes the existence of severe depression prior to June 30, 2004." The Commissioner argues in response that the ALJ's assessment of Plaintiff's RFC is supported by substantial evidence; the court agrees.

The ALJ found that "[t]he . . . longitudinal history does not establish disabling or even significant mental or emotional limitations on an ongoing basis for any continuous period of at least twelve months." (A.R. at 22.) In contrast, Plaintiff points to a single incident of overnight hospitalization for mental health treatment in 2003. (A.R. 856-61.) While the record shows that a "diagnostic impression" of major depressive disorder was made at the time (A.R. at 861), a mere diagnosis is insufficient to show that a condition is disabling. S*ee Baker v. Astrue*, 2010 WL 3191452, at *10 (D. Mass. Aug. 11, 2010). Furthermore, as the Commissioner argues, Plaintiff improved dramatically during the course of that hospitalization. (A.R. at 856). For example, upon entry, she was assigned a Global Assessment of Functioning (GAF) of 28 but upon exit, after twenty-four hours of observation, she was assigned a GAF of forty-five.[5] (A.R. at 856.) In addition, as the Commissioner argues, the lack of any follow-up mental health treatment

---

[5] "The GAF scale ranges from zero to 100 and '[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness.'" HARVEY L. MCCORMICK, SOCIAL SECURITY CLAIMS AND PROCEDURES § 8:137 (6th ed. 2009) (alteration in original) (quoting the Diagnostic and Statistical Manual of Mental Disorders Fourth Edition ("DSM-IV") 32). "A GAF of 21 to 30 indicated that '[b]ehavior is considerably influenced by delusions or hallucinations or serious impairment in communication or judgment . . . OR inability to function in almost all areas.'" *Id.* (alteration in original) (quoting DSM-IV 32). "A GAF of 41-50 indicates . . . '[s]erious symptoms . . . OR any serious impairment in social, occupational or school functioning.'" *Id* (alteration in original) (quoting DSM-IV 32).

9

until 2009 gives rise to the reasonable conclusion that the hospitalization was an isolated incident rather than a sign of disabling mental illness.

To be sure, Plaintiff points to psychiatric care administered in 2009 by Moris Pardo, M.D., as evidence of her disability. The evidence, however, is inadequate for two reasons. First, Dr. Pardo's care did not begin until five years after Plaintiff's insured status had ended, significantly limiting its relevance. (A.R. at 343.) Second, many of Dr. Pardo's observations actually support the ALJ's conclusion that Plaintiff's mental illness was not disabling. For example, Dr. Pardo noted that Plaintiff was alert and spoke clearly, had fair insight and judgment, and had no psychotic features, suicidal ideation, or cognitive deficits. (A.R. at 343, 415.) He also concluded that Plaintiff had no difficulty remembering work-like tasks or instructions, did not need special supervision, got along well with others, and had no problems traveling. (A.R. 343-44, 415-16.)

Finally, Plaintiff cites her own testimony that she experiences symptoms of depression such as feeling alone, spending significant time in bed, being uninterested in doing anything, and feeling anxious in large crowds. (A.R. at 42-50.) The ALJ found, however, that the "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with the . . . residual functional capacity assessment." (A.R. at 21.) Given the record as a whole, the court finds, the ALJ had more than sufficient evidence upon which to base this finding. A state agency medical consultant had concluded that Plaintiff's own reports of her symptoms were inconsistent with the descriptions of her treating psychiatrist, Dr. Pardo. (A.R. at 370.) The consultant further concluded that Plaintiff had no significant limitations in understanding and memory, social interaction, and

adaptation. (A.R. at 368-70.) The fact that there may exist some evidence to the contrary, and that evidence is at best thin here, does not extinguish the substantial evidence supporting the ALJ's findings. *See Martinez ex rel. J.R.M. v. Astrue*, 2012 WL 2914427, at *4 (D. Mass. June 25, 2012).

## V. CONCLUSION

The court finds, first, that the discrepancy between the hypothetical and the RFC does not amount to an error of law and, second, that the ALJ's decision is supported by substantial evidence. Accordingly, the Commissioner's motion to affirm is ALLOWED and Plaintiff's motion for judgment on the pleadings is DENIED.

IT IS SO ORDERED.

DATED: August 9, 2013

                                           /s/ Kenneth P. Neiman
                                           KENNETH P. NEIMAN
                                           U.S. Magistrate Judge